Jason D Haymore (UT-13236)
Dawn W. Emery (UT-10443)
PEARSON, BUTLER & CARSON, PLLC
1802 South Jordan Parkway #200
South Jordan, UT 84095
(t)801-495-4104
JasonH@pearsonbutler.com
Attorneys for Plaintiff

**UNITED STATES COURT DISTRICT OF UTAH
CENTRAL DIVISION, STATE OF UTAH**

| | |
|---|---|
| PAUL NESBIT, an Individual and BARRY WELLS, an Individual<br><br>          Plaintiff,<br>vs.<br><br>MARTIN ARASE, an Individual; SUSAN ARASE, an individual, THE COLUMBIA GROUP; and EAGLE SYSTEMS & SERVICES INC.<br><br>          Defendants. | **COMPLAINT AND JURY DEMAND**<br><br>Case No.: 2:20-cv-00430-CMR<br><br>Magistrate Judge Cecilia M. Romero |

Plaintiffs Paul Nesbit ("Nesbit") and Barry Wells ("Wells") (collectively "Plaintiffs") by and through counsel, hereby submits this Complaint and Jury Demand and complains against Defendants, Martin Arase ("Mr. Arase"), Susan Arase ("Ms. Arase"), The Columbia Group ("TCG"), and Eagle Systems & Services Inc. ("ESS"), (collectively "Defendants") as follows:

### INTRODUCTION

1. This is a proceeding to redress violations of federal law pursuant to the False Claims Act, 31 U.S.C. 3729 et., seq., namely wrongful termination and whistleblower protection.

### JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon this Court by the federal False Claims Act, 31 U.S.C. § 3729-3733. (3730 (h). This court also has jurisdiction of this action pursuant to its federal question jurisdiction, in light of the existence of a controversy arising under the law of

1

the United States, pursuant to 28 U.S.C. 1331, as well as diversity jurisdiction under 28 U.S.C sec 1331, and supplemental jurisdiction under 28 U.SC. sec. 1367.

3. Plaintiff Paul Nesbit is an adult individual, competent to bring this action, a citizen of the State of Oregon, and a resident of Deschutes county within the State of Oregon.

4. Plaintiff Barry Wells is an adult individual, competent to bring this action, a citizen of the State of Virginia, and a resident of Prince William county within the State of Virginia.

## PARTIES

5. Mr. Nesbit is an individual who at all times relevant herein, was and is a resident of Weber County, Utah.

6. Mr. Wells is an individual who at all times relevant herein, was and is a resident of Prince William County, Virginia.

7. Defendant, TCG is a Virginia corporation under the laws of the State of Virginia and exists in Fairfax County, Virginia.

8. Defendant, ESS, a subsidiary of TCG, is an Oklahoma Corporation under the laws of Oklahoma and exists in Comanche County, Oklahoma.

9. Upon information and belief, Defendant, Mr. Martin Arase is an individual who at all times relevant herein, was and is a resident of Fairfax, Virginia.

10. Upon information and belief, Defendant, Ms. Susan Arase is an individual who at all times relevant herein, was and is a resident of Fairfax, Virginia.

11. Defendants employ more than fifty (50) employees.

## FACTS

12. TCG is a U.S. government contractor serving the U.S. government, as well as the commercial sector, including domestic and international entities, and specializing in cyber security, acquisition, logistics management, C4SI, ship design, marine engineering & fabrication,

2

human performance strategy, training, financial management and information technology services.

13. ESS, is a U.S. Government contractor, who provides integrated logistics, materiel handling, supply chain, inventory control, and training services in support of public and private sector clients.

14. ESS offers services that include munitions and medical logistics services, base operations, emergency response training, mobilization or demobilization support, military training, and total package fielding.

15. Defendants, for all practical purposes, were integrated and operations were handled concurrently by a common core of ownership.

16. Martin Arase is not an employee of ESS.

17. Plaintiffs began employment with ESS on March 15, 2018 and July 9, 2018 respectively.

18. Mr. Nesbit was employed by ESS as the Chief Operations Officer and then promoted to President.

19. Mr. Nesbit's job description included the duties of supporting the following requirements:  management and administration of contract operations; design, development, and execution of strategic planning; design and development of policies and procedures; design and development of business development and marketing goals, plans, and actions; design, development, and leadership of initiatives to launch company into new markets; development and expansion of  business relationships with new and existing clients; business development proposal efforts; and, support to corporate compliance with relevant federal, state, and local laws, and regulations and ethical standards.

20. Mr. Wells was employed by ESS as Vice President and then promoted to Chief Operating Officer.

21. Mr. Wells' job description included the duties of supporting the following requirements: management of contract operations; design, development and execution of strategic planning; customer relationship management (CRM); business development efforts including proposals; business base expansion efforts and initiatives; labor union relationship management and administration; and, government contract management and compliance.

22. Prior to, during, and after the employment of Mr. Nesbit and Mr. Wells, ESS represented itself as a Woman-Owned Small Business (hereinafter "WOSB").

23. Prior to, during, and after the employment of Mr. Nesbit and Mr. Wells, ESS claimed that the owner and the person in control of the company is Ms. Susan Arase.

24. Ms. Arase's brother, Mr. Martin Arase, is the owner of The Columbia Group.

25. During their employment, plaintiffs learned that Mr. Arase was effectively and comprehensively controlling both firms and running all authorizations of government proposals, pricing, and budgetary expenditures through him, in lieu of his sister, Ms. Susan Arase, (as is required by federal regulation to be considered a Woman-Owned Small Business).

26. On January 4, 2019, Plaintiffs submitted a document to Mr. Arase and Mr. Perkins entitled "20 Critical Steps to Eliminate Protest and Other Risks" which categorically assigned 20 vital action areas and items necessary to help bring ESS into compliance with various federal statutes and regulations. This document became the basis for multiple discussions between Plaintiffs and Mr. Arase and Mr. Perkins between January 2019 and the date of the Plaintiffs' employment termination.

27. In order to qualify as a WOSB, Code of Federal Regulation (CFR) 127.200-203 clearly indicates that a business must be owned, led, controlled, and managed on a day-to-day, full-time (including during normal business hours) basis by the woman owner who must also hold the highest officer position within the business concern.

28. The regulations clearly indicate that in order for a small business to qualify and represent itself as a WOSB, including as an Economically Disadvantaged Woman-Owned Small Business (EDWOSB), it must comply with these requirements in order to take advantage of the various Small Business Administration (SBA) contracting set aside programs.

29. During the employment of Mr. Nesbit and Mr. Wells, Ms. Arase never made an appearance, electronically or in-person, despite repeated objections and requests to various individuals, including Mr. Arase and others, by the Plaintiffs.

30. It is a violation of the federal False Claims Act for a small business to knowingly misrepresent itself to the government, including representing itself through other federal government contractors, in an effort to win government contracts.

31. It is also a violation of Federal Acquisition Regulation (FAR) Subpart 519.302 for a firm to knowingly misrepresent itself as a Small Business (in general); and, FAR Subpart 519.308 for a firm to knowingly misrepresent itself as a WOSB or EDWOSB.

32. It is also a deliberate act of non-compliance with the Code of Federal Regulations (CFR) 121.103, specifically non-compliance with regulations pertaining to affiliation and control, for Mr. Arase through TCG to control and/or have the power to control ESS in the affirmative or negative, including the sharing of resources, capabilities, equipment, infrastructure, or personnel—all of which occurred prior to, during, and after the employment of the Plaintiffs.

33. Mr. Arase continually stepped over what the federal government considers a bright line between two government contracting firms being controlled by one person and being affiliated with shared resources, capabilities, or infrastructure of another entity.

34. Plaintiffs repeatedly cautioned, warned, and submitted action plans to Mr. Arase to stop the illegal activity, fully separate the two firms, and have Ms. Arase manage ESS on a day-to day basis as was being represented to the government.

35. Plaintiffs repeatedly submitted and briefed detailed lists to Mr. Arase and others identifying the steps and actions and timelines needed to stop the illegal activity and bring the firm into compliance with federal regulations.

36. Plaintiffs repeatedly informed Mr. Arase, Mr. Rick Perkins (Mr. Arase's senior business advisor), and several others that (a) ESS was liable not only to the federal government but potentially also to other federal government contractors through current and future teaming and business development efforts; (b) concerned about the corporate and personal liabilities due to the federal False Claims Act, FAR, and CFR violations; (c) as corporate officers, Plaintiffs were responsible for reporting illegal activities given professional and personal exposure to federal False Claims Act, FAR, and CFR violation liability; and, (d) as a result of this exposure and liability, could no longer conduct business development efforts.

37. Plaintiffs also provided to Mr. Arase and Mr. Perkins examples of federal government contracting firms that had been found in violation of the federal False Claims Act— examples which included significant debarment terms and punitive fines.

38. In an email dated September 16, 2019 (See Exhibit A) addressed to Mr. Arase and Mr. Perkins, Plaintiffs again warned of the growing risk of False Claims Act, FAR, and CFR violations that could be exposed by the common process of industry members filing protests during the very competitive government contracting procurement process.

39. Plaintiffs continued to identify the significant risks associated with falsely representing the firm to the federal government as well as to industry partner companies, whose efforts to competitively win government contracts could also be at risk should the government determine the extent of ESS violations of the federal False Claims Act, FAR and CFR governance.

40. Plaintiffs underscored the list of action items that needed to be done immediately to get ESS into compliance with federal regulations. The email further states that Plaintiffs have not been granted access to ESS's general ledger and do not understand, and cannot explain, some of the costs shown on financials.

41. The Plaintiffs attempted to demonstrate the depth to which Mr. Arase through TCG was exerting control over the ability of the Plaintiffs to help represent accurate and competitive business development pricing as part of their job responsibilities and efforts to grow and sustain ESS.

42. In a letter dated September 19, 2019, (See Exhibit B) addressed to Ms. Arase, Mr. Arase, and Mr. Perkins, Plaintiffs detail that:

   a. ESS is at significant risk of noncompliance with federal regulations governing women owned small businesses applying for government contracts;
   b. ESS and potentially its management staff and employees are at risk of civil and criminal penalties for mispresenting itself as a Woman-Owned Small Business;
   c. Plaintiffs had submitted action plans to encourage ESS to become compliant;
   d. Plaintiffs discussed these concerns on several occasions;
   e. As of the date of this letter no steps, other than arbitrarily listing Ms. Arase as the "CEO" of ESS on the company website, have been taken by Ms. Arase, Mr. Arase, or Mr. Perkins, to bring ESS into compliance;
   f. Plaintiffs pleaded with ESS, Ms. Arase, Mr. Arase and Mr. Perkins to take immediate action to comply with the federal regulations.

43. In an email dated July 12, 2019, (See Exhibit C) Plaintiffs detail a conversation they had with a law firm who was enlisted to help ESS with the cost and hiring of Japanese nationals. The letter again details the need for ESS and TCG group to decouple and become compliant with federal regulations. The letter states that:

    a. The law firm noted "substantial linkages … between ESS and TCG";

    b. The law firm affirmed that protests are common in government contracts and expressed grave concern that ESS, including officers of ESS, could be at risk;

    c. As noted repeatedly in other communiques, steps should be taken to decouple ESS from TCG, including the immediate transfer of human resource (HR) system, data and authority—along with other areas of affiliation between TCG and ESS—to ESS internally, including, as an example, Mr. Wells as the head of operations with direct oversight on personnel assigned directly to government contracts.

44. In an email dated July 18, 2019, (See Exhibit D), addressed to Ms. Arase, Mr. Arase, and Mr. Perkins, Plaintiffs again warn of protests being launched again ESS should it win or be on a winning team in pursuit of a competitive government contract. The email also states the need to "formalize Susan Arase as CEO."

45. In a phone call three weeks prior to being terminated, Plaintiff Paul Nesbit, told Mr. Arase and Mr. Perkins, that as an officer of ESS (Paul Nesbit – President) he felt an ethical responsibility to report illegal activities of ESS if they persisted given the liabilities involved.

46. In an email dated October 21, 2019, (See Exhibit E) Plaintiffs again explain how a protest would be forthcoming if ESS and TCG did not separate their business concerns and being operated as two distinct companies. Plaintiffs again plead with Mr. Arase, Ms. Arase, and Mr. Perkins to choose a course of action, including (a) either fix the violations of the federal False Claims Act, FAR, and CFR provisions; or, (b) or clearly affirm to Plaintiffs that they intended to take no action.

47. In an email dated October 3, 2019 (See Exhibit F) addressed to Mr. Arase, Ms. Arase and Mr. Perkins, Plaintiffs detail that they plan to resign November 1, 2019 if corrections are not made to bring ESS into compliance with federal regulations.

48. In subsequent discussions with Mr. Arase and Mr. Perkins, Plaintiffs stated that since Mr. Arase had not supported any of the action items needed to separate ESS from TCG and to bring the firm into compliance with federal False Claims Act, FAR, and CFR requirements—beyond arbitrarily listing Ms. Arase on the company website as the "CEO"—they could not expose themselves and their families to the continued risk of federal and civil (through industry partnerships harmed by the continued actions of Mr. Arase, Ms. Arase, TCG, and ESS) liability.

49. Plaintiffs were subsequently terminated by Mr. Arase (who importantly was not listed as an employee of ESS) on October 31, 2019 for refusing to participate in defrauding the federal government and causing potential harm to other corporate members of the government contracting industry.

50. Plaintiffs note that following the termination of their employment ESS continued to operate, presumably in the same manner of being controlled by Mr. Arase at TCG. In February 2020, one of ESS' remaining contracts, an Army medical logistics contract, ended without ESS being incorporated into the follow-on contract. ESS' remaining contract, however, is an ongoing Army munitions logistics contract with contract performance requirements at the Army's Fort Polk Logistics Readiness Center. This contract is governed under federal Cost-Plus Fixed-Fee (CPFF) contract regulations and currently runs through November 2020. CPFF contracts, including the CPFF subcontract issued by prime contractor URS Federal/AECOM to ESS prior to the Plaintiffs' employment with ESS, by definition require the pre-contract submission of approved indirect rates and the subsequent expenditures of incurred indirect costs which formed the basis for the submission of burdened labor rate pricing accepted by the federal government and as assigned across the periods of performance on the ongoing contract. Plaintiffs note that ESS was at the time of the loss of their employment incurring their indirect labor costs (salaries) to meet the federal government client's (US Army) expectations for management, administrative, contracts administration, and human resources support, among other common

indirect functions. Plaintiffs were inarguably performing essentially all indirect functions in support of this specific contract. Plaintiffs observe that as a result of their wrongful termination Mr. Arase, from TCG and through ESS, did not reasonably replace the indirect support provided by Plaintiffs with provable and documentable support, including incurring project related support costs previously afforded by Plaintiffs. Plaintiffs further note that under cost-type contract provisions of the FAR this activity by Mr. Arase and ESS would be illegal and further evidence of the extent of Mr. Arase's blatant schemes and wrongdoing.

## FIRST CAUSE OF ACTION
### Wrongful Termination in Violation of Public Policy /
### False Claims Act 31 U.S.C. § 3730 (h)(1) – Against All Defendants

51. Plaintiffs incorporate the preceding paragraphs as if fully listed here.

52. Defendants, Mr. Arase, and Ms. Arase, owed a duty to Plaintiffs to not terminate any employee, whether the employee is at-will or protected by an express or implied employment contract, in violation of a clear and substantial public policy.

53. A clear and substantial public policy exists in not forcing employees to participate in illegal or wrongful acts.

54. Plaintiffs were terminated after threatening to resign due to Mr. Arase and Ms. Arase defrauding the government by asserting their business, ESS, was a Woman-Owned Small Business.

55. The assertion that ESS was a Woman-Owned Small Business is in violation of the federal False Claims Act 31 U.S.C. § 3729-3733.

56. This assertion affects the public at large because it prohibits other Women-Owned Small Businesses from competing for coveted government contracts.

57. 13 C.F.R. 127.202 states "To qualify as a Woman-Owned Small Business (WOSB), the management and daily business operations of the concern must be controlled by one or more women."

58. Given ESS' legacy representation as a Woman-Owned Small Business, ESS is purportedly 51%-owned by Ms. Arase; however, Plaintiffs and others have first-hand knowledge that all of the decisions, including the signing of government contracts and spending of money was managed and handled by Mr. Arase. Plaintiffs have an extensive list of current and former TCG and ESS and other industry witnesses who will attest to the same.

59. 13 C.F.R. 127.202 also states "Control by one or more women or economically disadvantaged women means that both the long-term decision-making and the day-to-day management and administration of the business operations must be conducted by one or more women or economically disadvantaged women."

60. Again, ESS, while it appears to be owned by Ms. Arase, the day-to-day operations and long-term decisions were made by Mr. Arase.

61. Mr. Arase used his sister, Ms. Arase, to defraud the government by posing as a woman owned small business when in fact, Mr. Arase retained all control over the day-to-day management of ESS.

62. 13 C.F.R. 127.202 states that an WOSB must have a woman who holds the highest officer position in the concern, and "must have managerial experience of the extent and complexity needed to run the concern."

63. Throughout the term of their employment, Plaintiffs never saw Ms. Arase at the business and did not ever witness her managing the business or making an in-person, video, telephone, or electronic presence in any manner. Multiple witnesses will attest to the same.

64. In recognition for his efforts to significantly reduce corporate operating expenses and develop a robust future business development pipeline, including the development and submission of a number of promising competitive business proposals and promising business relationships and business opportunity pursuits—none of which existed prior to the start of his employment, Plaintiff Paul Nesbit was in January 2019 promoted to President of ESS, the highest officer position subsequent to Mr. Arase arbitrarily conferring the title of "CEO" to his sister, Ms. Arase, and having it listed on the ESS company website.

65. In recognition for his efforts to dramatically turnaround the performance of the two primary ESS government contracts, including a challenging US Army Fort Polk Logistics Readiness Center subcontract—on which ESS had in 2017 and prior to the Plaintiffs' term of employment received multiple industry Cure Letters from the prime contractor (URS Federal / AECOM) for unsatisfactory performance under the threat of contract termination—Plaintiff Barry Wells was promoted in January 2019 to the position of Chief Operating Officer.

66. 13 C.F.R. 127.202(g) states that while a man can own stock in the WOSB, "no males or other entity may exercise actual control or have the power to control the concern."

67. Plaintiffs repeatedly witnessed and dealt directly with Mr. Arase exerting comprehensive and final control over all aspects of ESS strategic, operational, and day-to-day tactical decision making, including retaining for himself all control over fiscal authority an obligation including all-encompassing control over ESS budgets, expenditures, and business development pricing.

68. Mr. Arase refused to sign off on a formal delegation of authority constructed by employee Ms. Linda Garcia which was designed to help reduce risks posed by Mr. Arase for violating federal False Claims Act, FAR, and CFR requirements. Mr. Arase visited ESS

government contract project sites, representing himself as the owner of ESS. Mr. Arase insisted on meeting with industry partners in the Washington, D.C. area during Plaintiffs' efforts to develop industry partnerships and business development pursuits.

69. Plaintiffs were following a clear and substantial public policy delineated in 31 U.S.C. § 3729 et seq., when they refused to participate in knowingly presenting, or causing to be presented, a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(1)(A).

70. Plaintiffs were following a clear and substantial public policy delineated in 31 U.S.C. § 3729 et seq., when they refused to participate in knowingly making, using, or causing to be made or used, a false record or statement material to a false or fraudulent claim. 31 U.S.C. § 3729(1)(B).

71. Plaintiffs were following a clear and substantial public policy delineated in 31 U.S.C. § 3729 et seq., when they refused to conspire in violation of paragraphs 34 or 35 above. 31 U.S.C. § 3729(1)(C).

72. On or about, September 19, 2019, an ESS "go-forward" letter was sent to Martin Arase, in which Plaintiffs, Paul Nesbit, and Barry Wells, warned ESS and TCG of not being compliant with federal governance requirements of a Woman-Owned Small Business.

73. These actions of Plaintiffs to ESS and TCG were protected activity under the federal False Claims Act.

74. Defendants had knowledge of Plaintiffs' protected activity.

75. By virtue of the activities described in the foregoing paragraphs of this Complaint, Defendants violated the clear and substantial public policy of the Federal False Claims Act, by terminating Plaintiffs' employment in retaliation their engaging in protected activity in violation of 31 U.S.C. sec. 3730(h).

76.     As a direct and proximate consequence of these violations by Defendants, Plaintiffs have been damaged and will continue to be damaged, and Defendants are liable to Plaintiffs for three times (2x) the amount of back pay, interest on the back pay, and compensation for special damages sustained as a result of the discrimination.

66.     Plaintiffs also requests that Defendants be held liable for including reasonable attorneys' fees, as 31 U.S.C. sec. 3730(h) provides.

## SECOND CAUSE OF ACTION

**Retaliatory Discharge in violation of 31 U.S.C. 3730(h) – Against all Defendants**

77.     Plaintiffs reallege and incorporate by reference all preceding numbered paragraphs.

78.     Defendants retaliated against Plaintiffs by terminating them, after Plaintiffs threatened to resign due to Mr. Arase and Ms. Arase defrauding the government by asserting their business, ESS, was a Woman-Owned Small Business.

79.     On or about, September 19, 2019, an ESS "go-forward" letter was sent to Mr. Arase, in which Plaintiffs, Paul Nesbit and Barry Wells, warned ESS and TCG of not being compliant with federal governance regarding Woman-Owned Small Business status claims.

80.     These actions of Plaintiffs to ESS and TCG were protected activity under the federal False Claims Act.

81.     Defendants had knowledge of Plaintiffs' protected activity.

82.     Plaintiffs were exercising a legal right or privilege pursuant to 31 U.S.C. sec. 3730 (h).

83.     By virtue of the activities described in the foregoing paragraphs of this Complaint, Defendants violated the clear and substantial public policy of the Federal False

14

Claims Act, by terminating Plaintiffs' employment in retaliation their engaging in protected activity in violation of 31 U.S.C. sec. 3730(h).

84.   As a direct and proximate consequence of these violations by Defendants, Plaintiffs have been damaged and will continue to be damaged, and Defendants are liable to Plaintiffs for three times (2x) the amount of back pay, interest on the back pay, and compensation for special damages sustained as a result of the discrimination.

85.   Plaintiffs also requests that Defendants be held liable for including reasonable attorneys' fees, as 31 U.S.C. sec. 3730(h) provides.

### *PRAYER FOR RELIEF*

Wherefore, Plaintiffs prays for judgment against Defendants as follows:

1. Double the back wages and an award of anticipated front pay;
2. Interest on the back pay;
3. For any special damages sustained as a result of the discrimination;
4. For all litigation costs, including reasonable attorneys' fees pursuant to 31 U.S.C. § 3729(h)(2);
5. For interests on the foregoing and such other relief as the court deems just and equitable.

### **JURY TRIAL REQUESTED**

Dated this June 22, 2020

 /s/ Dawn W. Emery
Dawn W. Emery
Attorney for Plaintiffs